**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| THERA LAMBERT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL NUTRITION CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)   **Case No. 17-cv-2149**<br>)<br>)<br>)   **JURY TRIAL DEMANDED**<br>)<br>)<br>)<br>) |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff THERA LAMBERT ("Plaintiff"), individually and on behalf of other Illinois consumers, through the undersigned attorneys, brings this First Amended Class Action Complaint against Defendant General Nutrition Corporation ("GNC"), upon personal knowledge as to her own actions and status, and upon information and belief based upon the investigation of counsel as to the remaining allegations, and alleges as follows:

## I.    INTRODUCTION

1.     This is a consumer class action brought by Plaintiff on behalf of all individuals in the classes defined below ("Class Members") who purchased GNC's Aloe Vera Skin Gel (the "Product") for personal use and not for resale.

2.     GNC advertises, markets, sells, and distributes the Product. The Product's label declares it to be "99% Aloe Vera Gel." The Product's label prominently describes the Product as "Aloe Vera Skin Gel," containing "Aloe Barbadensis Leaf Juice."

3.     In reality, according to independent laboratory tests, ***GNC's Product contains no actual Aloe Vera at all***.

1

4.      The Product's label is false, deceptive, and misleading, in violation of the Federal Food Drug & Cosmetics Act and its parallel state statutes, and almost every state warranty, consumer protection, and product labeling law in the United States.

## II.      PARTIES

5.      During the relevant period, Plaintiff and the other Class Members purchased the Product through GNC's numerous brick-and-mortar and online retail locations.  Plaintiff and Class Members suffered an injury in fact proximately caused by the false,  fraudulent, unfair, deceptive, and misleading practices set forth in this Complaint.

6.      Plaintiff is a resident and citizen of Crete, Illinois.  In or about 2015 and/or 2016, she purchased the Product at a GNC store near her home for her personal use.  Plaintiff read the Product label in GNC's store before she bought the Product.  Plaintiff relied on the label's representations, which misled her into believing that the Product contained Aloe Vera.  The supposed Aloe Vera content of the Product was material to her decision to purchase, because she wanted Aloe Vera for its commonly understood skin-healing and sunburn-relief qualities.

7.      Plaintiff would not have purchased the Product had she known the Product did not contain Aloe Vera.  Plaintiff suffered an injury in fact by purchasing the Product.  GNC's false, fraudulent, unfair, deceptive, and misleading practices set forth in this Complaint were the proximate cause of Plaintiff's injuries.  Plaintiff's damages are the price she paid for the Product plus applicable sales taxes.

8.      GNC is a Pennsylvania corporation with its headquarters and principal place of business in Pittsburgh, Pennsylvania.  GNC is thus treated as a citizen of the state of Pennsylvania.  GNC has numerous stores throughout the nation.  For example, presently there are 122 GNC retail locations in the State of Illinois.

### III.    JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction over Plaintiff's class claims pursuant to 28 U.S.C. § 1332(d), because the combined claims of the proposed Class Members exceed $5,000,000 and because GNC is a citizen of a different state than the named Plaintiff and Class Members.

10.    This Court has personal jurisdiction over GNC because GNC regularly conducts business in this District.

11.    Venue is proper in this District pursuant to: (1) 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District; and (2) 28 U.S.C. § 1391(b)(3), in that GNC is subject to personal jurisdiction in this District.

### IV.    FACTUAL ALLEGATIONS

12.    Aloe Vera gel is made from an extract of the leaf of the Aloe Vera plant.  Aloe Barbadensis is the scientific name of an aloe plant species that is widely used in the manufacturing of consumer products.

13.    Aloe Vera is used in many products marketed for burn and/or sunburn relief.  It is also a popular folk remedy, believed by some to treat everything from hypertension to the common cold when ingested.

14.    A 1999 study in the British Journal of General Practice found that consuming Aloe Vera might help lower cholesterol and reduce glucose levels.[1]  Naturally, these findings sparked renewed interest in products containing Aloe Vera.

---

[1] Vogler, B.K. and Ernst, E., Aloe Vera: Systematic Analysis of Clinical Efficacy, British Journal of General Practice 1999, http://www.aloevera-info.org/downloads/Study_AV_Clinical%20efficacy.pdf (last accessed Mar. 20, 2017).

3

15. "The global market for Aloe Vera products is estimated to have reached $13 billion, according to information presented at a recent workshop held by the International Aloe Science Council."[2]

16. GNC sells the Product with the front label of the bottle clearly referring to the Product as an "Aloe Vera Skin Gel" that is "99% Aloe Vera Gel":



---

[2] Hank Schultz, Global Aloe Market Estimated at $13 Billion, William Reed Media, http://www.nutraingredients-usa.com/Markets/Global-aloe-market-estimated-at-13-billion (Nov. 12, 2012) (last updated Sept. 26, 2016) (last accessed Mar. 20, 2017).

17.     Other than "GNC" and net weight, "Aloe Vera Skin Gel" and "99% Aloe Vera Gel" are the only representations on the front of the Product.  Together with a prominent stylized illustration of the aloe plant that further conveys the importance of aloe as a Product ingredient, these claims comprise the entire front panel.

18.     On the back, the ingredients list includes "Aloe barbadensis Leaf Juice" as the third predominant ingredient:



19.     Plaintiff's counsel had GNC's Product tested by proton nuclear magnetic

resonance spectrometry (H-NMR), and the results show that it does not contain any Aloe Vera or Aloe Barbadensis Leaf Juice. Furthermore, Acemannan, a signature Aloe Vera chemical component that indicates the presence of Aloe, was not detected in the sample of GNC's product.

20.    According to the American Herbal Pharmacopeia – *Monograph on Aloe Vera Leaf, Aloe Vera Leaf Juice, and Aloe Vera Inner Leaf Juice* (2013), aloe leaf extract should contain not less than 5% dry weight of acetylated polysacchardies (Acemannan) and not more than 5% dry weight of isocitric acid as determined by H-NMR. Products that do not contain Acemannan do not contain Aloe Vera and should not be labeled as aloe products.

21.    According to the International Aloe Science Council ("IASC"), "**[p]roducts that do not contain Acemannan are not considered to be true aloe vera**."[3]

22.    The IASC tests aloe products and certifies those products that truly contain aloe, as indicated by the presence of aloe's signature chemical marker, Acemannan.

23.    Improper manufacturing and storage processes can produce products with little or no Acemannan.

24.    The results of H-NMR testing commissioned by Plaintiff's counsel on a bottle of the same Product as Plaintiff purchased show no trace of aloe. As such, GNC's descriptions of the Product as being "99% Aloe Vera Gel," and "Aloe Vera Skin Gel," and containing "Aloe" or "Aloe barbadensis Leaf Juice" are false, deceptive, and misleading.

25.    Further, the claim "99% Aloe Vera Gel" cannot possibly be true even if the ingredient label is correct. The Aloe barbadensis Leaf Juice is listed third in order of predominance behind water and Polysorbate 20. It is mathematically impossible for this claim to

---

[3] The International Aloe Science Council, Aloe Vera Frequently Asked Questions, Are there standards established defining what is and isn't aloe vera?, http://www.iasc.org/Consumers/AloeVeraFAQ.aspx (last accessed Mar. 20, 2017) (emphasis original).

be correct when Aloe isn't the main component of the Product.

26.     The difference between the Product promised and the Product sold is significant. The lack of Aloe Vera in the Product diminishes its value to zero. Consumers, including Plaintiff and Class Members, would not have purchased the Product had they known the Product contains no detectable amount of aloe.

27.     GNC knew or should have known the Product contains no detectable amount of aloe, and it developed and knowingly employed a marketing strategy designed to deceive consumers. In developing the Product labels, GNC misrepresented the aloe content of the Product on the Product label, which misrepresentations were communicated to every person who purchased the Product via the words and picture on the label.

28.     Many companies sell lotions and gels designed to "cool" and "moisturize" the skin; but only a small percentage of those products include aloe, which is widely sought as a natural treatment for burns and sunburn. The back label of GNC's Product even states that "Aloe Vera has been shown to provide temporary, natural relief of minor skin irritations such as sunburn and dry, chapped skin." Consumers looking for relief from the medicinal/healing properties associated with aloe would not have purchased GNC's Product had they known the truth.

29.     The purpose of GNC's scheme was to stimulate sales and enhance GNC's profits.

30.     At all relevant times, GNC directed the above-referenced statements and claims to consumers in general and Class Members in particular, as evidenced by their eventual purchases of the Product.

31.     Plaintiff and the other Class Members were in fact misled by GNC's representations and marketing of its Product.

32. The absence of Aloe Vera leaves no reason to purchase the Product at all, since other proven and less-expensive products exist.

33. The Product is a "cosmetic" as defined under 21 U.S.C.S. § 321(i).

34. GNC's deceptive statements violate 21 U.S.C.S. § 362(a), which deems a cosmetic product misbranded when the label contains a statement that is "false or misleading in any particular."

35. The FDA promulgated regulations for compliance with the Food Drug & Cosmetics Act ("FDCA") at 21 C.F.R. §§ 701 *et seq*. (for cosmetics).

36. GNC's Product is misbranded under 21 C.F.R. § 701.1(b), which deems cosmetics misbranded when "[t]he labeling of a cosmetic which contains two or more ingredients [is designated] in such labeling by a name which includes or suggests the name of one or more but not all such ingredients." This is deemed misbranding "even though the names of all such ingredients are stated elsewhere in the labeling."

37. "Aloe Barbadensis Leaf Juice" is listed third of nine ingredients on the Product's back label, although the front label proclaims that the Product is "99% Aloe Vera Gel." 21 C.F.R. § 701.3(a) requires "[t]he label on each package of a cosmetic [to] bear the name of each ingredient in descending order of predominance . . . ." It is impossible that the product is "99% Aloe Vera Gel" or that "Aloe Barbadensis Leaf Juice" could be the third most predominant ingredient in the Product, since the Product contains none of the chemical markers of Aloe Vera. The labeling is thus a violation of § 701.3(a).

38. The introduction of misbranded cosmetics into interstate commerce is prohibited under the FDCA and all parallel state statutes.

39. Plaintiff and the other Class Members would not have purchased the Product had

they known that it does not contain Aloe Vera, or had they known about GNC's scheme to sell

the Product as misbranded cosmetics.

## V. CLASS ACTION ALLEGATIONS

40. Plaintiff brings this action individually and as a representative of all others

similarly situated, pursuant to Federal Rule of Civil Procedure 23, on behalf of the below-defined

Class:

> **Consumer Fraud Multi-State Class:** All persons in the States of
> California, Illinois, Missouri, New Jersey and New York who,
> within the applicable limitations period preceding the of the filing
> of this Complaint, purchased the Product for personal use and not
> for resale.[4]

> **Illinois Subclass:** All persons in the State of Illinois who, within
> four (4) years of the filing of this Complaint, purchased the
> Product for personal use and not for resale.

---

[4] The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, et seq.,
prohibits both unfair and deceptive business acts and practices on the part of entities conducting business
with consumers within the State of Illinois. The remaining 49 states and the District of Columbia have
similar statutes: Alabama (Ala. Code 1975, § 8-19-1, *et seq.*); Alaska (AS § 45.50.471, *et seq.*); Arizona
(A.RS §§ 44-1521, *et seq.*); Arkansas (Ark. Code §§ 4-88-101, *et seq.*); California (Bus. & Prof. Code
§§ 17200, *et seq.* and 17500 *et seq.*); Colorado (C.R.S.A. § 6-1-101, *et seq.*); Connecticut C.G.S.A. § 42-
110, *et seq.*); Delaware (6 Del. C. § 2513, *et seq.*); District of Columbia (DC Code § 28-3901, *et seq.*);
Florida (FSA§ 501.201, *et seq.*); Georgia (OCGA § 10-1-390, *et seq.*); Hawaii (H.R.S. § 480-1, *et seq.*);
Idaho (LC. § 48-601, *et seq.*); Indiana (IN ST § 24-5-0.S-2, *et seq.*); Iowa (Iowa Code Ann.§ 714H.1, *et
seq.*); Kansas (K.S.A. § 50-623, *et seq.*); Kentucky (KRS 367.110, *et seq.*); Louisiana (LSA-R.S. 51:1401,
*et seq.*); Maine (5 M.R.S.A. § 205-A, *et seq.*); Maryland (MD Code, Commercial Law,§ 13-301, *et seq.*);
Massachusetts (M.O.L.A. 93A, *et seq.*); Michigan (M.C.L.A. 445.901, *et seq.*); Minnesota (Minn. Stat.
§ *325F.68,et seq.*); Mississippi (Miss. Code Ann. § 75-24-1, *et seq.*); Missouri (V.A.M.S. § 407, *et seq.*);
Montana (Mont. Code Ann. § 30-14-101, *et seq.*); Nebraska (Neb. Rev. St. §§ 59-1601, *et seq.*); Nevada
(N.R.S. 41.600, *et seq.*); New Hampshire (N.H. Rev. Stat.§ 358-A:l, *et seq.*); New Jersey (N.J.S.A. 56:8,
*et seq.*); New Mexico (N.M.S.A. §§ 570012-1, *et seq.*); New York (N.Y. GBL (McKinney) § 349, *et
seq.*); North Carolina (N.C. Gen Stat. § 75-1.1, *et seq.*); North Dakota (N.D. Cent. Code Chapter 51-15, *et
seq.*); Ohio (R.C. 1345.01, *et seq.*); Oklahoma (15 O.S.2001, §§ 751, *et seq.*); Oregon (ORS 646.605, *et
seq.*); Pennsylvania (73 P.S. § 201-1, *et seq.*); Rhode Island (G.L. 1956 § 6-13.1-5.2(8), *et seq.*); South
Carolina (SC Code 1976, §§ 39-5-10, *et seq.*); South Dakota (SDCL § 37-24-1, *et seq.*); Tennessee
(T.C.A. § 47-18-101, *et seq.*); Utah (UT ST § 13-11-1, *et seq.*); Vermont (9 V.S.A. § 2451, *et seq.*);
Virginia (VA ST§ 59.1-196, *et seq.*); Washington (RCWA 19.86.010, *et seq.*); West Virginia (W. Va.
Code§ 46A-1-101, *et seq.*); Wisconsin (WIS. STAT.§ 100.18, *et seq.*); and Wyoming (WY ST§ 40·12-
101, *et seq.*). These statutes uniformly prohibit deceptive, unlawful, unfair, or fraudulent business acts or
practices including using deception, fraud, false pretenses, false promises, false advertising,
misrepresentation, or the concealment, suppression, or omission of any material fact. The States in the
Consumer Fraud Multi-State Class are limited to those states with similar consumer fraud laws under
the facts of this case as alleged herein: California, Illinois, Missouri, New Jersey and New York.

Excluded from the Class are GNC and its affiliates, parents, subsidiaries, employees, officers, agents, and directors.  Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

41.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

42.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).**  The members of the Class are so numerous that their individual joinder herein is impracticable.  On information and belief, Class Members number in the thousands.  The precise number of Class Members is presently unknown to Plaintiff, but may be ascertained from GNC's books and sales records.  Class Members may be notified of the pendency of this action by mail, email, Internet and in-store postings, and/or publication.

43.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members.  Such common questions of law or fact include:

      a.      Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Product are deceptive;

      b.      Whether GNC's actions violate  the state statutes invoked below;

      c.      Whether GNC breached an express warranty to Plaintiff and Class Members; and

      d.      Whether GNC breached an Implied Warranty of Merchantability to Plaintiff and Class Members.

44.     GNC engaged in a common course of conduct giving rise to the legal rights Plaintiff seeks to enforce, on behalf of herself and the other Class Members.  Similar or identical

statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale in comparison, in both quality and quantity, to the numerous common questions that dominate this action.

45. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, all Class Members were comparably injured through GNC's uniform misconduct described above. Further, there are no defenses available to GNC that are unique to Plaintiff or to any particular Class Members.

46. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the other Class Members she seeks to represent; she has retained counsel competent and experienced in complex class action litigation; and she will prosecute this action vigorously. Plaintiff and the undersigned counsel will fairly and adequately protect the Class's interests.

47. **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a representative class action, members of the Class would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, it would not be desirable. The resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for GNC. The proposed Class thus satisfies the requirements of Fed. R. Civ. P. 23(b)(1).

48.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).**  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against GNC, so it would be impracticable for Class Members to individually seek redress for GNC's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not.  Individualized litigation would create a potential for inconsistent or contradictory judgments, and increase the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.     CLAIMS ALLEGED

### FIRST CLAIM FOR RELIEF
**Breach of Express Warranty, 810 ILCS 5/2-313**
**(On Behalf of the Illinois Subclass)**

49.     Plaintiff incorporates the preceding paragraphs 1 through 48 as if fully set forth herein.

50.     Plaintiff brings this claim against GNC on behalf of herself and the Illinois Subclass.

51.     Plaintiff and each member of the Illinois Subclass formed a contract with GNC upon purchasing the Product.  The terms of the contract included the promises and affirmations of fact made by GNC on the Product's packaging and through marketing and advertising, as described above.  This labeling, marketing, and advertising constitute express warranties and

became part of the basis of the bargain, and are part of the standardized contract between Plaintiff and the members of the Class on the one hand and GNC on the other.

52.     Plaintiff and the members of the Illinois Subclass performed all conditions precedent to GNC's liability under this contract when they purchased the Product.

53.     GNC breached express warranties about the Product and its qualities because GNC's statements about the Product were false and the Product does not conform to GNC's affirmations and promises described above.

54.     GNC had actual knowledge that its Product contained no detectible levels of Aloe Vera and that the Product does not conform to GNC's affirmations and promises described above.

55.     Plaintiff and the members of the Class would not have purchased the Product had they known its true nature, namely that it does not contain any Aloe Vera.

56.     As a result of GNC's breach of warranty, Plaintiff and each member of the Illinois Subclass has been damaged in an amount equal to the purchase price of the Product and any consequential damages resulting from their purchases, including sales taxes.

57.     On January 12, 2017, prior to filing this Complaint, Plaintiff sent GNC a pre-suit demand letter requesting the relief sought in this Complaint and notifying GNC of the alleged breach of express warranty related to GNC's marketing and labeling of its Product.

**SECOND CLAIM FOR RELIEF**
**Violation of State Consumer Protection Acts**
**(On Behalf of the Consumer Fraud Multi-State Class)**

58.     Plaintiff incorporates the preceding paragraphs 1 through 48 as if fully set forth herein.

59.     Plaintiff brings this claim against GNC on behalf of herself and the Consumer

13

Fraud Multi-State Class.

60.     The Consumer Protection Acts of the states in the Consumer Fraud Multi-State Class[5] prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

61.     Plaintiff and the other members of the Consumer Fraud Multi-State Class have standing, because they have suffered an injury in fact and lost money as a result of GNC's actions set forth herein.

62.     GNC intended that Plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon their deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

63.     As a result of GNC's use or employment of unfair or deceptive acts and/or business practices, Plaintiff and each of the other members of the Consumer Fraud Multi-State Class have sustained damages in an amount to be proven at trial.

64.     In addition, GNC's conduct showed malice, motive, and a reckless disregard of the truth such that an award of punitive damages is appropriate.

### THIRD CLAIM FOR RELIEF
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 50511,** *et seq.*
**(On Behalf of the Illinois Subclass)**

65.     Plaintiff incorporates the preceding paragraphs 1 through 48 as if fully set forth herein.

66.     Plaintiff brings this claim against GNC on behalf of herself and the Illinois Subclass.

---

[5] California (Cal. Bus. & Prof. Code § 17200, *et seq.);* Illinois (815 Ill. Comp. Stat. 505/1, *et seq.);* Missouri (Mo. Rev. Stat. 010, *et seq.);* New Jersey (N.J. Stat. § 56:8-1, *et seq.);* New York (N.Y. Gen. Bus. Law§ 349, *et seq.).*

67.     Plaintiff has standing to pursue a cause of action for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/1, *et seq.*, because Plaintiff has suffered an injury in fact and lost money as a result of GNC's actions as set forth herein.

68.     The ICFA prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce.  The ICFA is to be liberally construed to effectuate its purpose.

69.     The ICFA provides:

> § 2. Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2.

70.     To state a claim under ICFA, a plaintiff must allege: (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on deceptive or unfair practice; (3) that the unfair or deceptive practice occurred during the course of conduct involving trade or commerce; and (4) that the plaintiff suffered actual damages proximately caused by the deception.

71.     As alleged herein, Defendant acted deceptively and/or unfairly in violation of ICFA.

72.     Due to concerns over health risks and environmental damages caused by chemical-laden personal care products, consumers increasingly demand products that are natural and plant-based.

73.     Defendant is keenly aware of consumer demand for plant-based products, including the price premium consumers will pay for products that actually contain Aloe Vera.

74.     Defendant abused consumer demand for Aloe products because it knew or should have known the truth about the Aloe content of its Product and failed to disclose that information to Plaintiff and the Class during the course of selling the Product. This constitutes a material omission under ICFA's deceptive prong.

75.     Defendant also made material misstatements in violation of ICFA's deceptive prong by making false statements regarding the Product's Aloe content on the label when it had no reasonable basis to do so.

76.      Defendant's conduct constitutes an unfair act under ICFA because it offends public policy, is immoral, unethical, oppressive, and unscrupulous, and causes substantial injury to consumers in the form of monies paid for a purportedly Aloe-based product, which, in fact, contains no Aloe.

77.     As a matter of public policy, Illinois has expressly adopted the federal food, drug, and cosmetic labeling requirements as its own: "[a] federal regulation automatically adopted pursuant to this Act takes effect in this State on the date it becomes effective as a Federal regulation." 410 ILCS 620/21.

78.     Pursuant to 410 ILCS 620/19, which mirrors 21 U.S.C. § 362(a), "[a] cosmetic is misbranded … [i]f its labeling is false or misleading in any particular."

79.     Thus, a violation of federal food, drug and cosmetic labeling laws is also a violation of Illinois law and Illinois public policy.

80.     By mislabeling the Aloe content of its purportedly Aloe-based Product, Defendant has violated Illinois public policy and has thus committed an unfair practice in violation of ICFA.

81.     Defendant's conduct is immoral, unethical, oppressive, and unscrupulous because it knows of consumers' demand for Aloe-based products and yet markets and sells the Product it knew or should have known, in fact, contains no Aloe. Plaintiff and the Class lacks a meaningful choice because Defendant purposefully conceals the truth regarding the Product.

82.     The purpose of an ICFA claim is to deter conduct or sharp practices by a defendant with the intention of misleading consumers about the relative quality of competitors.

83.     In this case, various competitor products claim the following percentages of aloe:

   a.   Nature Republic – 92%[6];

   b.   JASON – 98%[7]; and

   c.   Lily of the Desert – 99%[8]

84.     Due directly to Defendant's conduct, a reasonable consumer – including Plaintiff and members of the putative class – would be misled into the false belief that the GNC product has more aloe than the Nature Republic and JASON products and an equal amount of aloe as the Lily of the Desert product.

85.     However, testing indicated that the GNC product has no detectible level of aloe, while the Lily of the Desert and JASON products tested positive for aloe and the Nature Republic product showed trace amounts of aloe.[9]

---

[6] *See* Ex. 1.
[7] *See* Ex. 2.
[8] *See* Ex. 3
[9] See Exs. 4-7. NMR Reports and Gas Chromatography Results for Nature Republic, JASON, Lily of the Desert, and GNC, page 5 in each exhibit.

86.     As a result, unsuspecting consumers are led to believe that Defendant's product, which is priced below each of these other products, is the best value, and therefore, they are more likely to purchase an inferior product under the mistaken belief it is of the same quality as the other products.

87.     Similarly, Defendant's conduct also causes substantial harm to consumers because of the volume of the Product marketed and sold by Defendant. Consumers throughout the State of Illinois have suffered and continue to suffer each time Defendant's false statement that its Product contains Aloe results in a purchase of the Product.

88.     A recent investigative article by Bloomberg further underscores why Defendant's conduct is deceptive and unfair.[10]

89.     Bloomberg determined that "[t]he aloe vera gel many Americans buy to soothe damaged skin contains no evidence of aloe vera at all."[11]

90.     Plaintiff's counsel commissioned an independent laboratory to perform the same kind of testing discussed in the Bloomberg article—Proton Nuclear Magnetic Resonance testing—on Defendant's Product.  The results confirmed that this Product is one of the many Aloe Vera gels containing no detectible Aloe Vera and is an example of the subject deception on the marketplace.

91.     Bloomberg noted that suppliers of aloe products are essentially "on an honor system, even as the total U.S. market for aloe products . . . has grown 11 percent in the past year to $146 million."[12]

---

[10] No Evidence of Aloe Vera Found in the Aloe Vera at Wal-Mart, CVS, Bloomberg, https://www.bloomberg.com/news/articles/2016-11-22/no-evidence-of-aloe-vera-found-in-the-aloe-vera-at-wal-mart-cvs (Nov. 22, 2016, 4:00 AM CST) (last accessed July 5, 2017).
[11] Id.
[12] Id.

92. The Bloomberg article also notes, and Plaintiff's counsel's independent testing supports, that some Aloe Vera gel products (not Defendant's Product) test positive for the presence of Acemannan, glucose, and malic acid—proving that these products ***do contain genuine aloe***.

93. One executive of a certified supplier of genuine aloe products commented to Bloomberg that "[t]here's a lot of people that swear by aloe and love it, and if you put [aloe] in your product, you'll sell more of it whether it's a cream or a lotion for sunburns." *Id.* This is the motivation behind Defendant's mislabeling scheme: to mislead consumers into believing that the Product contains this valued ingredient and thereby sell more of it.

94. Defendant has used this consumer attraction to aloe's widely recognized healing qualities to its benefit by advertising and labeling the Product as "aloe gel" when it contains no detectible level of aloe. In so doing, Defendant misleads consumers about the quality of the Product as compared to competitor products that contain genuine aloe.

95. The prevalence of so-called Aloe Vera gels—including Defendant's Product—that contain no detectible aloe has adversely affected the market for Aloe Vera gel by creating consumer confusion.

96. Jeff Barrie, sales manager of AloeCorp, a supplier of raw aloe powder, told Bloomberg that, "he's seen competitors beat his lowest prices by half. That means they're not selling aloe." "'Aloe is all harvested by hand. It's an involved process and it's not cheap,'" according to Barrie. *Id.*

97. Because it markets its Product as "aloe gel," Defendant can sell it at a significantly lower price than competitors can sell legitimate aloe gel products because it contains no detectible aloe. Based on the Product's price advantage and the representation that, like more

expensive aloe gels, it contains aloe, Plaintiff was duped into purchasing the Product rather than one truly containing aloe.

98.    When less expensive, non-genuine "aloe" gels such as Defendant's Product misrepresent their aloe content, consumers and sellers of genuine aloe products suffer.  As with Plaintiff and the Class, consumers may be lured into purchasing the Product rather than a competitor product truly containing aloe and the healing qualities they seek.  This results in the consumer paying for something she did not receive, while legitimate aloe sellers miss out on a sale.

99.    Defendant's misrepresentation that the Product contains 99% aloe also misleads consumers about its quality and desirability as compared to other sunburn relief products that do not purport to contain aloe.  So misled, a consumer may forgo an effective non-aloe sunburn remedy and instead purchase the mislabeled Product in hopes that the purported-but-absent aloe will heal sunburn.

100.   Accordingly, Defendant's conduct, which in nature and scope exceeds the bounds of merely failing to perform as promised under a contract, is deceptive and unfair in violation of ICFA.

101.   Defendant intended that Plaintiff and the putative Class rely on its misrepresentations and omissions. By misrepresenting and omitting material information regarding the content of Aloe in the Product (or lack thereof) Defendant has engaged in a deceptive practice.

102.   Further, Defendant knew or should have known that its representations of fact concerning the Product are material and likely to mislead consumers.

103.   Plaintiff relied on Defendant's label misrepresentations and claims that the Product contained aloe, and these misrepresentations and aloe claims are the proximate cause of Plaintiff's purchases of Defendant's Product and Plaintiff's corresponding economic losses.

104.   Defendant's practices, acts, and course of conduct in marketing and selling the Product as Aloe Gel when it contains no detectible amount of Aloe are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. Like Plaintiff, members of the Class would not have purchased the Product had they known that it contained no actual Aloe Vera.

105.   Defendant's deceptive and unfair act involved "trade" and "commerce," as defined by the ICFA.  815 ILCS 505/1(f), because it occurred during the course of advertising, offering for sale, and distributing the Product to Plaintiff, the Class, and the general public.

106.   Plaintiff and the Class suffered actual damages directly and proximately caused by Defendant's deceptive and unfair act in the amount of the purchase price they paid for Defendant's Product plus sales tax. As contemplated by ICFA, an injunction against Defendant's continued sale of the mislabeled Product should be issued.  815 ILCS 505/10a(c). Defendant has sold its mislabeled Product to members of the consuming public many times, both before and since selling it to Plaintiff.

107.   So long as the Product is offered for sale bearing the deceptive and unfair misrepresentations challenged herein, the likelihood exists of continued and repetitive similar harm to the consuming public (including absent putative Class Members not yet aware of the substance of this Complaint), as well as sellers of genuine aloe products and sellers of other sunburn relief products that do not purport to contain aloe.

108.   Given the extent of Defendant's conduct, including its abuse of consumers' preference for Aloe products by knowingly and recklessly selling the Product as advertised, Defendant's conduct showed malice, motive, and a reckless disregard of the truth such that an award of punitive damages is appropriate.

109.   GNC intended that Plaintiff and each other member of the Class would rely upon GNC's deceptive conduct, and a reasonable person would, in fact, be misled by this deceptive conduct.

110.   As a result of GNC's use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other members of the Class have sustained damages in an amount of the purchase price they paid for GNC's Products plus sales tax.

## VII.   DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury of all claims in this Complaint so triable. Plaintiff also respectfully request leave to amend this Complaint to conform to the evidence, if such amendment is needed for trial.

## VIII.   REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class proposed in this Complaint, respectfully requests that the Court enter judgment as follows:

A.     Declaring that this action is a proper class action, certifying the Consumer Fraud Multi-State Class and the Illinois Subclass requested herein, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel;

B.     Ordering GNC to pay actual damages to Plaintiff and the other Class members;

C.     Ordering GNC to pay statutory damages, as provided by the applicable statutes invoked above, to Plaintiff and the other Class members;

D.     Ordering GNC to pay restitution to Plaintiff and the other Class members;

E.      Ordering GNC to pay attorneys' fees and litigation costs;

F.      Ordering GNC to pay both pre- and post-judgment interest on any amounts awarded; and

G.      Ordering such other and further relief as may be just and proper.


Dated: November 20, 2017                    /s/ Amy L. Marino
                                            Amy L. Marino (*Admitted*)
                                            Jason J. Thompson *(Admitted)*
                                            **SOMMERS SCHWARTZ, P.C.**
                                            One Towne Square, 17th Floor
                                            Southfield, Michigan 48076
                                            (248) 355-0300
                                            amarino@sommerspc.com
                                            jthompson@sommerspc.com

                                            Nick Suciu III
                                            **BARBAT, MANSOUR & SUCIU PLLC**
                                            1644 Bracken Rd.
                                            Bloomfield Hills, Michigan 48302
                                            (313) 303-3472
                                            nicksuciu@bmslawyers.com

                                            *Interim Class Counsel*

                                            Katrina Carroll
                                            Kyle A. Shamberg
                                            Ismael Salam
                                            **LITE DePALMA GREENBERG, LLC**
                                            212 West Hacker Drive, Suite 500
                                            Chicago, IL 60606
                                            312-750-1265
                                            kcarroll@litedepalma.com
                                            kshamberg@litedepalma.com
                                            isalam@litedepalma.com

                                            *Local Counsel*

23

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, certifies that a true and correct copy of the foregoing **First Amended Class Action Complaint** was filed this 20th day of November, 2017 via the Court's electronic filing system, which will serve all counsel of record.

*/s/ Amy L. Marino*